Thank you. Dandenby Chakrabarty held that anything new under the sun that is made by man is patentable subject matter. This case took the bold step of holding a genetically engineered bacterium to be patentable. And I say this now because I don't want us to lose sight of the fact that 35 U.S.C. 101 that governs subject matter patentability is intended to be very broad. It's intended to avoid pigeonholing technology into different bins as many aspects of this Patent Office decision have tried to do. Mr. Harris, why are Kaminsky opinion decision controls? Well, Kaminsky was a decision that talked about a situation that required mental steps. There had to be a mental process where the human made a choice. Here we have something where there's no human choice. This is a method of selling. It's a method of doing different things and then selling using a shared workforce. It's not purely mental processes because there is no use of human intelligence claimed in the claim. Now, admittedly, people take actions based on things in the claim. But this happens in almost every method claim. Clicking on a website, for example, that's a step you might see in a method claim. That's a human taking an action. But that's different than cases like Kaminsky and other cases where people are forced to make decisions and that mental process is what I believe you said in Kaminsky was not patentable subject matter. What is Claim 1, not mental steps? Well, Claim 1 says developing a shared marketing force, using that shared marketing force to market different products so that different autonomous companies have a different ownership, produce those related products, obtaining a share of profits, and obtaining an exclusive right to market. There's no human decision involved in any of these steps. These are all things that are carried out, admittedly, using humans, but they're carried out. But every method claim must inherently have some interaction with something. There must be an interaction between a human and a machine or a human and something. Of course, the humans have to do things to carry these out, but this is not what Kaminsky called exercise of human intelligence. There's no mental steps here. There's just operations that are carried out using a shared marketing force. But that was, in Kaminsky, it was an arbitration. It was a method of selecting which arbitration method to use, if I remember it correctly. So you were actually requiring the human to make a selection. And one of the other cases cited, the Malkorts case, was a choice of how to use salesmen, which salesmen should allocate different aspects to handle different customers. All of these mental steps case had to do with choices, choices made by a human. And this is different. This is using the shared marketing force to market products, different than forcing a human to make a choice and claiming how that human makes a choice. So anyway, what I wanted to say about this was this is clearly a method of doing business. But we all know that State Street held that there is no pro se proscription against claiming business methods. And so, because there isn't, and I believe there aren't any other lines of cases that prevent this patentability, then cases like Diamond v. Chakravarti, which hold that anything under the sun made by man is patentable, should control here. The original patent office rejection was that this was an abstract idea. But I believe that the case law on abstract ideas doesn't fit with this kind of claim. There's really two lines of cases for abstract ideas. The classic line, such as rubber-tipped pencil, which says that if no practical application is claimed, then what's left is an abstract idea, because it's the idea itself without a practical application. Here, we have a practical application. We're using the shared marketing force to market different products. That is an application. So it's not an abstract idea. It's not an idea alone. The more modern abstract idea cases, like Diamond v. Deere and Henry Warmerdame, all relate to the use of mathematical algorithms. Many of them claim that if all you're doing is manipulating a mathematical algorithm, then the claim relates to an abstract idea, because as Warmerdame said, mathematical constructs are the paradigm of abstract ideas. But here, there's no mathematical algorithm, directly or indirectly. It's using a shared marketing force to market. Now, there's a different way of looking at this that has been done by the Patent Office and I think was adopted by the Apelli's brief, which tried to make the argument that an abstract idea is governed by the preemption doctrines. In the Apelli's brief, Apelli takes the position that this claim requires either a transformation to a different state of a thing, or a useful, concrete, and tangible result. Now, my brief talks about why these aren't the right tests, even if the preemption analysis is correct, but more basically... But are you speaking of Claim 1 or Claim 24? I'm speaking of Claim 1 right now. But more basically, the doctrine of preemption is based on the notion that there's a mathematical algorithm or law of nature or something like that underlying the claim. And that you can't preempt that law of nature because you didn't invent that law of nature. You discovered the law of nature. So it would be improper to claim that which you did not invent. So preemption says you can't claim a law of nature because you didn't discover that law of nature. But this claim is different, because this claim doesn't have a law of nature or mathematical algorithm. The inventors here did discover what's underlying this claim. There's not simply a mathematical algorithm that they adopted and that they're trying to claim. So preemption, in fact, is appropriate here. Just as if you had invented a widget that had never seen the light of day before, and it's a completely different widget. It would be appropriate to preempt that widget. It would be appropriate to write a claim that says, a widget, period. The preemption doctrine, again, is only intended to cover those situations where there's a mathematical algorithm that shouldn't be preempted because that mathematical algorithm was not discovered by the applicant. So I already talked about, briefly, the mental processes doctrine, and there's one other point that's raised in the Apelli's brief and raised throughout things the Patent Office says, and that's the technological arts argument, where the Patent Office tries to make the point that sales of products are not within the technological art. And I think that, first of all, the Patent Office themselves rejected their own argument previously in their Henry Lundgren decision where they said there should be no separate technological arts rejection. But more basically, who's going to decide what's technological arts and what's not? Selling software is not technological arts, but the Patent Office themselves, I believe, thinks that software is a technological art. How does software get to the consumer if there's no way of selling the software? Technological arts is a slippery slope, but in any case, here we've got a method of selling software, and I think that needs to be considered as part of the software itself. But you're claiming that a company is a physical thing. How is a company a physical thing? Claim 24 does say that a company is a physical thing. So Claim 1, which is what I was talking about, is a method. But then you say it's a physical thing. You say in the brief you mentioned that a company is a physical thing, such as an analogous to a machine. How is a company a tangible physical thing? Well, a company is a physical entity created by operation of law. And again, using the analogy to Diamond V. Chakrabarty, they found that living beings are patentable. And if a living being is patentable, it would seem to me analogous that a company created by operation of law should be patentable. Is a company a living thing? It's not a living thing, but it is a thing. How is it tangible? I don't quite understand the tangibility aspect of a company. A company has... General motives tangible. I believe it is. They sell stock. They carry out operations. They produce products. They change things to different states of things. Why is it a physical tangible thing? Well, because they do many of the things that the patent office would require for you to decide something was a tangible thing. They transform things to different states of things. They create useful, concrete, and tangible results. So I believe a company is, in fact... But those are results. The results might be tangible, but the actual company itself is a tangible thing. So I can't touch the company's general motives as a tangible aspect. You can touch the stock certificate, correct, but you cannot touch the company. That's tangible. But that's representative. It's not the company itself. And I'm not a corporate lawyer, but I do know that corporations were created by law, and corporations create entities that are recognized by the law. And while you can't touch them, they are recognized by the law, and they are, in fact, entities. When you say tangible, does that mean physically tangible? It means tangible in the sense the patent office considers it. So I would call that existing in the real world, as opposed to something that only exists in your mind. A company could be just that. It could exist in somebody's mind. A company in and of itself is intangible from that perspective. There are circumstances where a company could be intangible, like you just said. Can you give us one example where it's tangible? Just the company itself. Just a corporation that was created by operation of law. That's the only example I can give you where something is actually tangible. And they exist in facilities, in a building. You can touch the building. But those are elements of the company. That's not the company itself. Correct. Let's hear from the rest of you gentlemen. Mr. Harris, you want to say something? Mr. Jacob. Good morning, Your Honor. May it please the Court. Ferguson's claims are not machine-invented. They do not transform any subject matter into a different state of the bank, nor do they comprise a series of inputs that go through a series of steps to create some kind of output, some kind of real-world result. It seems to me that what you're making is strong in the position that these claims are directed to the business. And it does appear as if the office isn't interested in such claims. Shouldn't this be a matter of registration? We're ruling out precedent. We have State Street Bank, which made a strong statement that a method of doing something is a method of doing something. If, in fact, the accumulated experience of the office, of the nation, is that such claims either for a reason or another are difficult to examine. This is a firm decision. I'm not going to examine it. Or whatever else. Isn't that a matter of legislative change at this point, rather than unilateral action by the office? No, Your Honor. There's no need for congressional intervention here, because court-made principles already explain clearly why this set of claims fail under Section 101. Yes, it's true. State Street said there is no general business method exception under Section 101. And we agree with that. Just like any other method. So we're going to treat business methods- Out of business, full discretion, adequate discretion, and so on. And as well as Section 101. But you have permitted what State Street has done in one position. That the office has allowed the claims, I don't know, the other ones which were initially raised. Yes, it's true that there are certain business methods that are going to qualify under Section 101. And will still qualify under Section 101. In view of Comiskey, or in view of our positions we're taking here, or our Bilski brief. And the distinction to be made here is the distinction that the Comiskey court made, which is that what happened in State Street, AT&T, Arrhythmia, Allopat, those were all machine-implemented claims that transformed data signals to produce a real-world useful result. And that was the distinction there. And that's why those claims passed muster. And unlike this claim, which isn't machine-implemented, which isn't transforming anything, and so therefore doesn't meet the standards- You know that a computer is a machine. Digital calculations are a machine. The brain works the same way. Why isn't that a machine under the patent? It's under the patent. Well, because, as I think what the Comiskey court was trying to point out is- I'll ask you- Yes. Why the brain isn't as much a machine as the electrons around the computer. Because we view our brains as some kind of mental process, some kind of concept or idea that could drive some human action. Whereas a machine is actually some type of technology. And I think that's what the court's been talking about when it refers to the technological arts. But that's not what- I think that is what State Street sought to patent. It was not patenting how the machine worked. It was patenting the steps, however they were performed. If I recall State Street correctly, it performed a two-step analysis for Section 101 purposes. First, it examined whether the claim fell within a Section 101 statutory category. And it found that it did. It found that it was a machine. And then it went to the next step. It says very clearly, that does not end our analysis under Section 101. And then it went through the judicial exception analysis to try to determine whether that State Street machine claim was nothing more than a disembodied mathematical concept. Or if it was a practical application of it. And then it indeed found it was a practical application. So in that instance, it went through the analysis, found that it fell within one of the categories, a machine. And then secondly, it determined it didn't preempt a judicial exception. So that if in the Ferguson claim, one of these several steps happens to have a computer helping in the organization of the information, then your objection to that claim would dissolve. I think it would be a much closer question, and then we'd have to take a look at it and see exactly what the machine is doing. Because, as Comiskey points out... You're talking about statutory subject matter. Yes. And does tearing apart what the machine does, is that a lie that you think should be brought? Well, at least when there's a machine involved in a claim, there's some application of science or technology carrying out that claim process. So now at least we know we're in the correct arena. Now there's some actual technological part involved in the claim. And it actually appears to comply with the transformation or machine implementation test set out by the Supreme Court. Nevertheless, that's not the end of the inquiry. Because there are going to be examples where there could be some level of machine implementation that's not enough. Comiskey cites Ingrate Brand as an example of where maybe just because one step is being performed by a computer or machine, perhaps for some kind of data-gathering purpose, for example, maybe that's not enough. And then you also have to look at cases like... You're saying we ought to have some rules that people can rely on. You're saying that just bring us your ideas for computer-implemented procedures, and we'll let you know if it's enough. I think we do need rules, and that's why we do need cases like this one in Bilski and Comiskey that can start to drive the law and help clarify this area that, frankly, the agency's been struggling with for the past few years. And we're trying to understand it better and have objective indicia that we can use to assess and evaluate whether claims comply with 101. We acknowledge that 101 should be a red draw. But at the same time, we still have to fall within one of the four categories. We still have to be a practical application of one of the judicial exceptions. The four questions of practical application, you say it doesn't matter how smart you are if you don't use a machine in your invention to do that. It's not necessarily true, because if you were transforming some subject matter of a claim, then that can also qualify under Section 101. That's what we know from Diamond v. Deere, where it interprets the term process as it's used in Section 101. It goes back and says that term in the 1952 Patent Act means exactly the same thing as all of our decisions have defined process prior to 1952. And then they cited and quoted Cockney v. Deere, Corning, and other cases to explain that it's either machine implementation or it's transformation of subject matter. So, if you don't have a machine actually recited for performing certain steps, that's not necessarily going to knock you out of the water. Now we have to still see if perhaps there's some kind of underlying subject matter in the claim that is being transformed, reduced, operated on to a different state or thing. And where is the public interest concerned by drawing these lines? It's the idea, it's the notion from the Constitution that the patent system is reserved for the technological arts. And that's what Comiskey says, it quotes this court's en banc, Pollock v. Colvin's decision. Useful arts, not the technological arts of the institution. That's right, it does say useful arts, but however, this court's predecessor, In re Verge, explains to us that useful arts, as that term was used by the framers in the Constitution, refers to the modern day understanding of technological arts. So he said if it's not useful, it doesn't fit into the patent system. He didn't say that if you can do it in your head, you've got a lot of office. Well, then there's a series of mental process claims, or mental process cases, like Comiskey, like In re Meyer, which the decision describes Meyer's invention as a quote-unquote mental process for a neurologist to follow. Perhaps there's a need for understanding, and perhaps for drawing some lines. But it seems to me that this should be done in a public forum, and not by the officer. I understand that concern, however, our best reading of the cases requires this outcome, because it defines process in a particular way. It defines it in a way that was cited and quoted by Comiskey several times, when it quotes Howard of PTO brief, when it quotes Cochran, when it quotes Diamond v. Deere, all to say that it means a very certain thing. It doesn't mean every single series of steps qualifies as steps for the process. No, it didn't. And Comiskey explains that State Street qualified as a machine because there was, in fact, a machine there. Likewise, AT&T, which was a method claim, qualified as a process because it was a machine-implemented process claim. And so therefore, computer-implemented. So for that reason, it met the statutory, it fell within the statutory category. In addition, it was also for a practical application of the mathematical algorithm that was involved there. And so for that second reason, for those two grounds, it passed muster under section 101. So all Ferguson has to do is use a computer to keep track of the sensor, and that wouldn't change anything? It would come closer, and then we'd have to evaluate how the claim is really written. But that, I think, would have to wait for another case. I don't think I can give a PTO position on how we can rewrite a claim right now in this court and decide what's in and what's out. What we can talk about here is what are the proper legal principles that need to be applied to claims like this. And I think Comiskey was a good step forward in that direction in helping to clarify what the principles are and what arena are we supposed to be in when we're evaluating what should be in the patent system versus what is outside of the patent system. Again, business methods can qualify under section 101. However, it still has to meet all the conditions just like any other method claim. That's true for 101, 102, 103. It's a powerful policy statement to say that this potentially vast class of innovative concepts is outside of the patent system. I have no idea how that should be, where the incentives are, what the economic and technological or commercial impact is. And I don't know if there's a policy for that in some states. I don't believe we have, but I think what we are doing is following the law. And if the law changes and we get a different set of guidance, then, of course, we'll evaluate that. But right now, as the law stands, our best understanding of it, this category of ideas, business concepts that are just naked, pure business methods, don't fall into the patent system right now the way the Constitution and the statute has been interpreted by this court and by the Supreme Court. And so, for that reason... Mr. Chairman, you're not finished yet. I'm not finished yet. I was winding up, but go ahead. Are you saying that Wikomiski controls this case? Yes. Excuse me. In my view, the Wikomiski opinion forecloses this case, these claims as being eligible. Claim 24. Claim 24 is different because Wikomiski was really about a process claim. Claim 24 is a so-called paradigm claim, and so I think maybe a different set of analysis has to go on there. Number one, it doesn't qualify under any statutory category. We know from Neusten what a manufacturer is supposed to be. It reaffirmed the Supreme Court definition of that term to be the production of articles from raw or prepared materials. Whatever is going on in Claim 24 is not the production of articles from raw or prepared materials, nor is it a machine. The Supreme Court has defined machine to be some combination of devices. It's supposed to be a concrete thing. That's the definition the Supreme Court gave us. I don't see a combination of devices in Claim 24. I don't see how you could reasonably read that claim. Well, why would a company not be tangible? Well, two things. We cite a Supreme Court case which explains that a company, a corporation, can be interpreted as an intangible, invisible legal entity. But it has assets. It has shareholders. It's tangible. And then we can also look at what was disclosed in this specification. And all that's disclosed is a sales force, a group of people. And that's consistent with one of the standard dictionary definitions for a company, which is a group of people assembled together. And so you look at either of those views on what is a marketing company, and neither of those come close to matching the tangible, concrete thing that's required for a statutory machine. For that reason, it fails. It also fails because, in our view, like the method Claim 1 here, it's directed to an abstract idea. When we see the term paradigm, the common understanding of that term is some kind of business model, some kind of plan or theory. And that comports with the specification which talks about how Ferguson's invention here is a new business model. It's a business plan. And so for that reason, just as in Claim 1, when we look at two lines of cases, there's the AT&T, State Street, Allopath, Arrhythmia line of cases. And then there's Comiskey, Schrader, Ingray-Meyer, Ingray-Malcor, Ingray-Patent, and Hotel Security, and Ingray-Grams. And we ask ourselves, what side does Ferguson's claims fall on? They comfortably fall on this side, where all these claims are deemed to be abstract ideas. Now, in some places they refer to it as a mental process or an abstract idea or even a mathematical algorithm. But any time you have a series of human-performed steps that are driven solely by human intelligence or a concept in one's mind, if all you're doing is carrying that out completely devoid of any machine, manufacture, composition of matter, or transforming anything, then what you've got there is some intangible procedure. What the patent system should be reserved for are tangible things, tangible procedures. We don't have that here. We didn't have in Comiskey, nor Schrader, nor Meyer, which was the mental process and neurologist that should follow. But again, that neurologist was actually performing a series of examination steps on a patient. It wasn't a pure mental exercise where someone was just sitting somewhere quietly trying to figure something out. There were actual human actions going on there, just as there are in the Comiskey claim, where you have people enrolling into a system, you have people incorporating language, arbitration language, into the will. You have someone that's physically conducting an arbitration, just as you would have a judge physically conducting a trial. Those are all human steps. And there is no – in all of those cases, they were devoid of any technological aspect. Any more questions for Mr. Chairman? Thank you, Mr. Chairman. Thank you. This case is about the recognition that you could develop a software product in your basement. It might be the greatest software product in the world, but you don't have the resources to compete with the software behemoths in order to market it. Now, that is a technological application. That is in the technological arts. That is useful. That is something really great. If this company worked, this company would open all kinds of new software products to the world. So why shouldn't it be patentable? And, you know, if this is not a method of doing business, then I don't know what is. It clearly is a business method. Mr. Chan characterized it as a pure business method just a minute ago. Well, State Street Bank controls. It says methods of doing business aren't per se unpatentable. The Patent Office tries to pigeonhole subject matter into one of the existing categories that this kind of subject matter can exist in. But State Street still requires to follow the 104th category. Well, that's correct. It would eliminate the 111 compliance of the fourth category. That's true, but at least claim one is a process because it says a method doing this, doing that, selling products. At least claim one is a process. Now, I believe claim 24 is also statutory for reasons I've said, but at least claim one falls into one of those categories. And to take Judge Newman's point, does it really make any sense that it would be different if the claim said using a computer to sell the products? I think that's Mr. Chan's point, but I don't think it makes any sense. Use a human to sell the products, use a computer to sell the products. I think what Mr. Chan said would probably be a closer issue. Well, he said it might be different. Might be different. Right. It's not necessarily within the category. Correct. But again, Benson held that section 101 must be able to handle the flow of onrushing technology, which seems to be inconsistent with the idea of pigeonholing this technology into one of a number of different categories, requiring transformation of subject matter, requiring a useful, concrete, tangible result. All these things are examples of things that indicate that subject matter is patentable subject matter, but I don't think these are the exclusive tests for patentable subject matter. And when people come up with new ideas and new things that are useful, they should be able to patent them, like here, where Mr. Ferguson came up with this idea that could change the way software is distributed to people. All rise. The Honorable Court is adjourned until this afternoon at 2 o'clock.